at all? Thanks. Mr. Schweitzer, I see you reserved two minutes for rebuttal. You can begin whenever you're ready. Thank you, Your Honor, and may it please the Court. This case proceeds from order of dismissing a second amended complaint on the grounds that the there were no non-conclusory or insufficient non-conclusory factual allegations of employer status as to... Mr. Schweitzer, I'm so sorry. I'm having a hard time hearing you. Do you mind speaking into the mic? Thank you. I appreciate it. As to three corporations and three individual defendants, which were their owners and primary operators, I want to focus on the allegations of employer status as to whether or not they were employer status, in particular for the individual defendants, because their control over the plaintiffs demonstrates their employer status. Their control over the corporations demonstrates the corporations' employer status. The corporations' interrelation of operations demonstrates their single employer status. So do you agree that it's the Carter four-factor test that applies, or is it something else? It is the Carter four-factor test that applies generally, but it's also the test that Judge Swain applied. So I'm curious as to what case law you can have applying Carter tests to workers in the construction industry. Would we have to create new law to find for you? No, I don't think so. I take it the substance of your Honor's question is whether the individuals here were employees or independent contractors? Sure. Excuse me. So there's no prophylactic rule that workers in the construction industry are necessarily independent contractors, and the indicia of control here demonstrates, in my view, that they are not. Now, this Court has gone into what differentiates an employee from an employee, and I'm going to turn it over to, I believe it's Barfield. Excuse me. And that wasn't the basis of the District Court's dismissal here, right? No, indeed, Your Honor, and I said as much. Let me ask you about the Carter factors. Let's start with Mr. Escobar. The District Court, I think, acknowledged that factors one and three, there were specific allegations, non-conclusory allegations with respect to hiring and firing, and rate and method of payment, and still concluded that it was an implausible claim, because I guess the second and fourth factors were not sufficiently articulated. What's your response to that? My response is that this Court has been very clear that the Carter factors do not all have to be found in order to plausibly state an employer-employee relationship. None of the Carter factors need necessarily be in place to demonstrate an employer-employee relationship. The inquiry is to the economic reality of the situation. The economic reality of the situation here is that, especially Johnny Escobar, had and exercised the power to control the employees. He gave them assignments where to work, including across state lines. He determined their rate and method of payment. He hired supervisors to do that. There are only two things that seem to be absent. One is the maintaining of employment records, but your position is that, at least with respect to time records, that they were not maintained. So that can't be dispositive, right? Excuse me. The actual issue is not whether records were maintained. It were that would create an incentive for employers not to maintain records in order to avoid liability as employers. The question is, not only was there a responsibility, at least some records were made, worksite records were made and directed and sent back to Escobar construction. That's pleaded at... And there were false tax forms made as well, right? Yes, Your Honor. What about the work schedules? Was Mr. Escobar involved in controlling the work schedules and the conditions of employment or not? Work schedules and conditions of employment is quite broad. It goes beyond determining what shifts and what hours there were. It also includes directing employees to complete certain tasks or assignments. Mr. Escobar was intimately involved in that. In fact, he directed employees to work at various particular worksites and on particular days, including directing them to work specifically on Saturdays and Sundays they would ordinarily have had off. I didn't see that allegation. Where is the complaint that he directed them to work on Saturdays and Sundays? That's at... I don't want you to waste all your time. You can tell me in rebuttal if you want to look while your adversary is... All right. No, it's fine, Your Honor. It's pleaded generally for in paragraph 127A88. That doesn't help you prove that Mr. Escobar was the employer individually, right? But he also alleged that he was at the site every day in Ithaca, for example, right? That's correct. He supervised the workers at that site. He also hired other supervisors to supervise workers at other sites. I would direct the court's attention to Irizarry and Herman. We're hiring... We're hiring supervisors to supervise employees demonstrates a person's authority to supervise and control themselves because, of course, a person can only delegate to a subordinate power that they have themselves. Your plaintiff's... I'm sorry. No, go ahead. The allegation is they work 84 hours a week, 7 days a week, 12 hours a day? Unfortunately, yes, Your Honor. So I know that... I understand that you are alleging that their three corporate defendants operate as a single entity. But I would hope that you would explain a bit how you imagine the relationship between individual liability and corporate liability because what I am not seeing, and you are welcome again on rebuttal to point to the particular allegations, is where you demonstrate that the single entity is liable as an employer under the FLSA. Okay. So that goes to integration of operations and joint control over employees. And here that's present. Not only... No, I do understand that you are alleging that they operated as a single entity. The part that I do not see in the complaint, and again, you're welcome to show me on rebuttal, is where you allege that they worked for that integrated single entity as opposed to individuals. I see. Excuse me. So the individuals and their respective entities aren't really extricable, right? These are each fairly small entities. Nations only indeed does projects for Escobar. Escobar is controlled entirely by Johnny Escobar, its sole owner, and it's controlled entirely by Johnny Escobar. So the entities and work closely with Mr. Escobar, those entities paid the employees fairly arbitrarily, not really depending on what sites they worked at. One might pay for work done at another site, and they issued tax forms to the employees. Thank you, Mr. Schultz. We'll hear from Mr. Grace. Good morning. Daniel Grace for all appellees. Judges Bianco, Perez, and Merriam. May it please the court. The district court properly overruled appellant's objection to the magistrate judge's denial of their motion to amend their complaint for the third time, and properly granted appellee's motion to dismiss appellant's second amended complaint. So, sir, may I ask, do you have your statement? Yes. Can you pull it up for me, please? Yes, Your Honor. On Roman numeral two through about four, are there about 22 Southern District and Second Circuit cases being cited? And on page one, is there a jurisdictional statement? And on page two, is there a statement of the case that alleges some facts and at the very end has a summary? Yes, Your Honor. Okay. And there were no fewer than three times in your brief where you represented to this court that those items were missing and that they were sanctionable. And I would ask for you to tell me who do you think deserves sanctions now? Your Honor, I would withdraw that as I see right here. Counselor, I am very much a proponent of zealous advocacy, but the job we do here is really hard. And it's even harder when we have officers of the court making very verifiable and checkable claims that are of the nature as extreme as saying that your opposing counsel committed a sanctionable offense and you did it three times. So I just ask you to keep that in mind as you practice before this. Yes, I understand, Your Honor. And the drafting of the brief is a collaborative effort in my office. Obviously, it falls on me and it was an oversight on my part to not check off those first two pages. I will point out that there has been a theme in the litigation of this type of scenario. There's a pending motion in the lower court for this type of thing. So it's not an excuse for putting it in there, but I think it's just something I feel I should point out. But I do take your point, Your Honor. Let me ask you about Mr. Escobar. The cases where courts dismiss these types of claims under the Carter test is when there's just one paragraph that just basically verbatim cites the factors. But here, let's just go through them. You can tell me why this isn't enough. Ms. Escobar, the power to hire and fire employees. There's three paragraphs that say he would bring new workers to the construction site. He would fire workers when there was a shortage of work. He hired the two plaintiffs. He hired this other individual, Mr. Padilla, as an assistant supervisor. So clearly there's a lot of detailed allegations of his power to hire and fire, right? Well, Your Honor, that is just one factor. All right. Okay, but we agree that that's not conclusory, right? What more can you say? Offering, yes. Viewing it in the light. So let's go to three. The rate and method of payment. They say Escobar promised Perez an hourly rate of $18. Arias an hourly rate of $17. This other individual, another worker, a rate of $18. He promised to increase one of the plaintiffs to $25. So again, these are very specific allegations of him setting the rate of pay, right? Yes, Your Honor, but I would submit that you could say the same for a manager. A manager in a company has the power to set a rate of pay if they have that authority. I'm just going through the factors with you. We've said these are the four factors, so what I'm suggesting to you is, and the district court acknowledged, on factors one and three, that's pretty good, right? If factors one and three alone on these, the facts that they've proffered are enough. Factor four is maintaining employment records. So if you have a, in a lot of these cases, as you know, the allegation is they don't maintain time records. That's the whole point of the litigation, right? So it can't be dispositive that they have an allegation in there that Mr. Escobar, for example, didn't maintain records, right? That can't be. You don't have a plausible claim because you didn't allege that he's the person who maintains the records. If their whole argument is that he didn't maintain at least time records, right? Well, their argument is against the individual. You see, the issue is they're pleading that the individuals are employers, therefore the companies they own are employers. So if you have someone who's hiring and firing people, who's setting the method of pay, and even though they allege he's not keeping time records, as I pointed out to Mr. Schweitzer in paragraph 48, they say he issues tax forms indicating they were paid in excess of the amount paid, and he texted them about it. It's paragraph 41, he issued pay in another person's name because the plaintiff didn't have a tax number. So he's involved in corporate documentation, false corporate documentation, according to the complaint, right? As their allegation states, but again, they're arguing that it's in their individual capacity, they're employers. All right, and then work schedules, even though he says that he delegates it to project supervisors, the work schedules, they would report those hours to him, and that he was involved in directing them to various locations. He told them to go to Lafayette, Indiana, he had direct contact with them at Ithaca, he was there every day. So again, these are far from conclusory allegations that Mr. Escobar runs the company. These are very detailed aspects of what an owner, an employer would do, right? That also conflict with their allegations as to Mr. Plasios. So they go on to say that Mr. Plasios does the same in certain areas for, it basically does the same thing for these individuals as they already allege Mr. Escobar does. And in their individual capacity, that's extremely important. They're not saying that the companies are doing the same thing. They're saying that the individuals are doing the same thing and conflicting with each other. You're saying this should be discredited, we should ignore these allegations? Because some of them, for Plasios, there's some overlap that they're also doing that. That was the basis for the district court's decision. The district court just said, they hit one and three, but two and four wasn't enough. And it didn't analyze the paragraphs under two and four that I gave you. I don't think ignore. I think that actually they should be noted that they are in direct contradiction of each other. Well, does the complaint say that one of them had exclusive authority? Mr. Plasios is Mr. Escobar's son, right? Correct. And so is it your contention that you can't have a family business where both the father and the son have authority to hire and fire, that that's impossible? So if they say Plasios had that authority, they must be wrong about Escobar and vice versa? They're saying that Plasios is responsible for JRS services. That's his branch, and that Mr. Escobar is responsible for Escobar construction. But then go on to say that Mr. Plasios did some things for Escobar construction. So they conflict with each other. Again, it's very important that they're talking about these individuals as individual employers, and thus the companies they own. So if you look here, there's no one who's being poor according to, in some cases you have them saying, well, you're sufficient as this entity or this individual, but you're not as to this individual. In this case, these individuals who they allege worked 84 hours, in essence, there's no employer, right? Correct, your honor. I mean, I'm limited-  No, because I'm limited to the four corners of the complaint, but one way to look at it is if you hired someone to do some work at home, to do some work in your garden, to do some work in your driveway, and then that person works for 80 hours a week to finish your project, and then claims that you were their employer. They're an independent contractor. Okay, but independent contractor is a separate issue, right? That is what they work. Is that what we're deciding here today, whether they're independent contractors or we're deciding whether or not they put sufficiently under the Carter test? The latter. All right. Okay, so I want to be crystal clear on this. The dispute is not over whether or not they are independent contractors. The dispute is over who was their employer. Correct, at this juncture, the dispute is whether they satisfied for any of these individuals or companies that they were the legitimate employers of these appellants. On the entities, they allege, in terms of non-conclusive allegations, that they were paid for work for Nations and JRS for work that they performed at the behest of Escobar Construction. So they say, Mr. Escobar is telling us what to do. We're doing work for Escobar Construction. We're receiving checks from the Nations and JRS. Isn't that support that these companies are operating jointly? Well, that's pretty unusual if you're separate companies, right? Well, for Nations in particular, it was incorporated long after the fact. So there's some question marks over those allegations. But again, we're limited to what they're alleging. Just merely alleging that someone paid, someone wrote me a check for something is not enough to show that entity was an employer. How about Escobar's providing materials for all the companies? Well, that could be a relationship between companies from a construction relationship. But I guess that happens all the time. How about the Escobar's telling which work to do at Binghamton and Lafayette, even if it's being done ostensibly under Nations or JRS? The Escobar's controlling all the work, no matter which of the three companies it's done under. I guess that would speak more to Escobar's control over these individuals, not JRS or Nations. If they're- They're alleging, at Judge Meary's point, that it's a tight family run operation, right, it's the niece and the son, right? Those are the two other individuals. Certainly the son, I believe the niece. Right, because Escobar's essentially, he's running Escobar Construction as the employer, and he's running these other companies jointly together. And they're issuing checks, and they're using materials, and they're telling them which jobs to go to. Just however they want to do it, with no type of separation. Yes, but Judge, this court has the Carter factors to apply. They do state only two, one in three for Mr. Escobar, not Escobar Construction. I know, but he said it all was. You don't have to, they're not elements. In other words, you don't have to hit every element, they're just factors, right? They're, it's not a rigid four-part test, Judge, but there is case law to state that merely just stating the factors, hitting two of them, in this case hitting two of them, doesn't rise to the level of an employer-employee relationship. And I'll point out that none are stated, even stated, for Nations Construction. And I believe one- Which case have we said that? In which case has this court said, if you hit one of the three really detailed, that that's not enough for a possible claim? No, that was my discussion of the case. The lower court has said that it's not a strict four-part test. All right, thanks. Thank you, Your Honor. Thank you. All right, Mr. Schweitzer, you have two minutes on the floor. I wanted to come back to a point that Judge Merriam hit, and I think it was well taken that an employee can certainly have more than one employer at a time. Well, I'm sorry, were you going to come back with paragraphs pointing to my question as to the establishment of corporate liability and the question that Judge Bianco asked? Okay. Excuse me, so it's not, so it's not the case that a single integrated enterprise needs to be part of a single corporate structure. It's not the case, for instance, that it has to be a parent and two subsidiaries. Single integrated enterprise is a broader inquiry going to how close, how interrelated their operations are, how centralized the control of labor relations is. And here, labor relations was highly centralized in the person of Mr. Escobar, who delegated authority not just to supervisors on paper, but also to his younger family members. Excuse me. It's, interrelation of operations is also highly demonstrated by the fact that these individuals were paid essentially arbitrarily by whatever company happened to write the check, rather than what company they worked for. The interrelation of operations is also shown by the highly similar operating practices, which included highly deficient timekeeping, which included reporting such timekeeping as there was to Escobar Construction, not to the, not to the ostensible worksite company. Excuse me. So, even if it's not the case that there wasn't a rigidly defined corporate structure, what's actually going on here is that these, on paper, three different entities are, in fact, really operating together. Can't they operate as joint employers? Wouldn't that be sufficient under our case law as well? Yes, it would. Without the single integrated standard? Yes, it would. All right. Thank you both. We'll reserve the decision. Have a good day. Thank you, Your Honor.